UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEPHEN CHARLES SAMFILIPPO,

    Petitioner,                                        Civil No. 2:12-CV-10481
                                                       HONORABLE ARTHUR J. TARNOW
v.                                                                 UNITED STATES DISTRICT JUDGE

MICHIGAN DEPARTMENT
OF CORRECTIONS,

    Respondent,
_____/

## OPINION AND ORDER DENYING THE PETITION FOR WRIT OF HABEAS CORPUS, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO APPEAL IN FORMA PAUPERIS

Stephen Charles Samfilippo, ("Petitioner"), confined at the Parnall Correctional Facility in Jackson, Michigan, has filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his *pro se* application, petitioner challenges his conviction for unlawful use of a motor vehicle, M.C.L.A. 750.414; felon in possession of a firearm, M.C.L.A. 750.224f; and possession of a firearm in the commission of a felony, M.C.L.A. 750.227b. For the reasons that follow, the petition for writ of habeas corpus is DENIED.

### I. Background

Petitioner was convicted following a jury trial in the Wayne County Circuit Court, in which he was tried jointly with his co-defendant, Nicholas Springstead, but by separate juries.

Theron Hoffman testified that he arrived home from work at about 3:30 p.m. on June 20, 2009. Hoffman walked over to petitioner's house, where Catrina Compton was standing on the porch. Hoffman talked to her about a friend's birthday party scheduled for that night, before returning home. Compton came over to Hoffman's house at about 4:00

p.m. Nate and Caitlin Gorney arrived at Hoffman's house at about the same time. A short time later, petitioner and Springstead came over to the house and entered through the back door uninvited. Hoffman was surprised by their presence. The men were intoxicated so Hoffman asked them to leave. Although petitioner was Hoffman's neighbor and Hoffman had known the co-defendant from school, neither man had been inside of his house before. (Tr. 11/17/2009, pp. 49-56, 87-98, 118).

Later that night, Hoffman started a bonfire at his house before going to his friend's birthday party. The Gorneys were at his house along with Hoffman's girlfriend, Brittany Brewer. Compton came over to the house to inform Hoffman that she was not going to the birthday party. While the bonfire was taking place, petitioner and Springstead walked into Hoffman's backyard. Both men were even more intoxicated and they demanded to know why Hoffman had asked them to leave his house earlier in the day. Hoffman asked them to leave again. Hoffman told petitioner and Springstead that he was leaving his house to go to a party. The men argued before petitioner and Springstead left. Hoffman left with the Gorneys and Brewer shortly thereafter. Brewer left her purse inside of Hoffman's house. (*Id.,* pp. 56-60, 104, 122, 124).

About an hour to an hour and a half later, Hoffman received a phone call from Compton, who was crying. Compton informed Hoffman that her car was no longer at petitioner's house where she had parked it and she could not find it. Hoffman told Compton that he would call the police and that he would be there in a minute. When Hoffman arrived back on his street, Compton was standing in the street in front of petitioner's house. Hoffman handed his house key to the Gorneys and Brewer and told them to wait inside.

*Samfilippo v. Michigan Department of Corrections*
No. 2:12-CV-10481

When Nate Gorney went to the back door, he noticed that it had been pushed open. The window was also pushed open. Hoffman went inside of his house and discovered that the door was open, the window pulled out, and the screen pushed in. The back door was damaged. It looked like someone had tried to kick it in. Hoffman testified that the inside of the house had been "completely destroyed." Items had been knocked over, the television was broken, Hoffman's mattress was pushed off the bed, his niece's entertainment center was pushed down on the bunkbeds, and the door to his parents' bedroom had been kicked in. The padlock on the gun cabinet in Hoffman's parents' bedroom was broken. Hoffman testified that three guns were missing from the cabinet, two rifles and a twelve-gauge shotgun. The guns were about four or four and a half feet tall and they all had straps. Hoffman testified that other items had been taken from the home, including a bag of socks, Brewer's purse, an X Box 360, a PlayStation 2, a wooden bow and arrow, and his nephew's Sponge Bob game. (*Id.,* pp. 60-70, 74, 79, 114-15, 144-55).

The police arrived at the scene, in response to the stolen car report. Hoffman asked the police to come to his house because it had been broken into and his guns and other items had been stolen. While the police were searching his house, Hoffman heard people yelling "they're here. They're here." Hoffman and the police ran outside. Petitioner was driving Compton's car and Springstead was in the front passenger's seat. Petitioner pulled the car up into his neighbor's driveway. Hoffman looked inside the car to see if any of his items were there. Hoffman testified that he saw an X Box 360 cord and a PlayStation 2 cord in the passenger's seat, Brewer's wallet, and Meijer's bags. Hoffman did not give the defendants permission to enter his house or to take anything. (*Id.,* pp. 80-86, 98, 141, 144).

3

*Samfilippo v. Michigan Department of Corrections*
No. 2:12-CV-10481

Catrina Compton testified that she drove over to petitioner's house on the afternoon of June 20 to visit petitioner's sister. At some point, she walked over to Hoffman's house to say hello, then left for work. When Compton finished work at 11:00 p.m., she drove back to petitioner's house and parked her car in front of petitioner's house, before walking to Hoffman's house to say good-bye and to ask him to wish their friend "Happy Birthday." Compton left her purse underneath the passenger seat of the car and tossed her keys into a pair of shoes by the counter inside of petitioner's house, before leaving to take a ride on a motorbike. Compton was gone for about three to three and a half hours. When she returned to petitioner's house, her car was missing. Compton called Hoffman to locate her car and to find out where it was and what to do. Compton also called the police. Compton later saw petitioner pull her car into the neighbor's driveway after the police had arrived on scene. Springstead was in the passenger seat. Compton testified that she never gave either man the keys or permission to take her car. Compton inspected her car and found the contents of her purse scattered in her back seat. Compton testified that there was a torn Meijer's bag in the passenger seat and an amp fuse and X-Box wires in the back seat. None of these items except her purse and its contents were in her car when she parked it in front of petitioner's house. Compton noticed from the odometer that about 30 to 32 miles had been put on her car since she parked it. (Tr. 11/18/2009, pp. 26-51, 65.)
Rosemarie Zalewski, petitioner's mother, lived on Lincoln Street in Wyandotte, Michigan with her daughter and petitioner. In the early morning hours of June 21, 2009, Zalewski was sleeping, when she was woken up by the sound of cans being crushed or stomped by the garbage can. Zalewski asked petitioner what he was doing. Petitioner replied "nothing,

4

*Samfilippo v. Michigan Department of Corrections*
No. 2:12-CV-10481

Mom." At about 2:30 a.m., she heard some plastic bags rattling. Zalewski asked petitioner what he was doing. Petitioner replied that he was getting a bag for Nick for his X-Box. Zalewski went back to sleep. (*Id.,* pp. 6-10, 20-21).

At about 3:30 a.m., Zalewski's daughter and her daughter's friend Catrina came home and informed her that Compton's car had been stolen. Zalewski went outside for a short time and when she came back inside the house, she saw a wallet and a Sponge Bob DVD on her counter, which she had never seen inside of her house before. Wondering what petitioner had been doing by the garbage can earlier in the night, Zalewski went outside and looked in the garbage can and saw a purse. Zalewski went back inside where the wallet was open on the counter. Zalewski noticed charge cards and a driver's license. Zalewski walked back outside and asked whose purse this was and who was "Brittany." Zalewski brought the purse over to Hoffman's house. Zalewski later saw petitioner pull up in Compton's car. (*Id.,* pp. 10-17).

Zalewski testified that petitioner admitted taking Compton's car, but denied breaking into Hoffman's house. Petitioner told her that he was asleep on the couch when Springstead woke him up from outside on the porch. Petitioner indicated that Springstead had some "stuff" with him. Zalewski testified that she did not see petitioner sleeping on the couch earlier in the evening, even though she had gotten out of bed more than once. Petitioner admitted to his mother that he knew that the items in Springstead's possession were stolen, but he did not describe the items. Zalewski later invited a police officer to come into her house, where she showed him two PlayStation games on the counter that did not belong to her. The police also looked in her backyard and in the garbage can in the

5

backyard, where they found a white laundry bag containing socks and Brewer's purse. (*Id.,* pp. 17, 22-24, 82-84).

The prosecution played recordings of telephone calls made between petitioner and other persons while he had been incarcerated in jail for the jury. The recordings, however, were not transcribed into the record. (Tr. 11/19/2009, 3-20, 45-47). The parties stipulated that petitioner had been convicted of a specified felony and was not eligible to carry a firearm. (Tr. 11/18/2009, p. 106).

Petitioner was convicted of larceny of a firearm, larceny in a building, unlawful use of a motor vehicle, felon in possession of a firearm, and felony firearm. Petitioner was acquitted of a first-degree home invasion charge.

At petitioner's sentencing, the parties stipulated that the trial court failed to read the mere presence aiding and abetting instruction to the jury. Although the prosecutor felt that he could prevail on this issue on appeal, the prosecutor nevertheless agreed to dismiss the charges of larceny of a firearm and larceny in a building. In exchange, petitioner agreed that he was "giving up [his] right to file [an appeal] as to the aiding and abetting issues on the counts that are now being vacated." (Tr. 12/17/2009, pp. 3-6).

Petitioner subsequently filed a motion to remand to permit him to move for a new trial on the convictions that were not vacated. The Michigan Court of Appeals granted petitioner's motion to remand. *People v. Samfilippo*, No. 296097 (Mich.Ct.App. November 15, 2010). The trial judge ultimately denied the motion for a new trial. (Tr. 1/28/2011, pp. 18-19).

*Samfilippo v. Michigan Department of Corrections*
No. 2:12-CV-10481

Petitioner's conviction was affirmed on appeal. *People v. Samfilippo*, No. 296097 (Mich.Ct.App. July 21, 2011); *lv. Den.* 490 Mich. 972, 806 N.W.2d 319 (Mich. Dec 28, 2011).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Whether there was sufficient evidence to allow the jury to conclude that Samfilippo had knowledge he was transporting firearms.

II. Whether Samfilippo was deprived of due process.

III. Whether the jury instructions were improper.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An

7

"unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

The Supreme Court has explained that "[A] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 130 S. Ct. 1855, 1862 (2010)((quoting *Lindh v. Murphy*, 521 U.S. 320, 333, n. 7 (1997); *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002) (*per curiam*)). "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

### III. Discussion

A. Claims # 1 and # 2. The sufficiency of evidence claims.

In his first and second related claims, petitioner contends that there was insufficient evidence to establish that he knowingly possessed firearms in this case, so as to support his convictions for felon in possession of a firearm and felony-firearm.

The Michigan Court of Appeals rejected petitioner's claim:

While there is no direct evidence that defendant actually or constructively

possessed firearms, there is sufficient circumstantial evidence to support a finding of possession. There was evidence that Hoffman's house was broken into and that three guns were stolen. In telephone conversations recorded while defendant was in jail and in his statement to Detective Rick Wiese, defendant denied breaking into Hoffman's home and denied stealing things, including guns. However, in a telephone conversation with a woman identified as "Stacey," he acknowledged that Springstead broke into Hoffman's home and took the guns and then came to defendant with the stolen property and that he (defendant) took Compton's car without her permission to get rid of the stolen property. When defendant and Springstead returned with Compton's car, defendant was driving. Viewing this circumstantial evidence in a light most favorable to the prosecution, we find that the evidence permits the inference that Springstead stole the guns from Hoffman's house and that defendant knew this and took Compton's car without her permission and transported the stolen property, including the guns, in Compton's car in order to dispose of it. Thus, there was sufficient circumstantial evidence to permit the inference that defendant possessed a firearm.

*Samfilippo,* Slip. Op. at * 3-4.

It is beyond question that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship,* 397 U.S. 358, 364 (1970). But the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). This inquiry, however, does not require a court to "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 318-19(internal citation and footnote omitted)(emphasis in the

9

original). Circumstantial evidence alone is sufficient to support a conviction, and it is not necessary for the evidence at trial to exclude every reasonable hypothesis except that of guilt. *Johnson v. Coyle,* 200 F. 3d 987, 992 (6th Cir. 2000)(internal quotations omitted).

More importantly, a federal habeas court may not overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim. Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 132 S. Ct. 2, 4 (2011). "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.* Indeed, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 132 S.Ct. 2060, 2065 (2012).

Finally, on habeas review, a federal court does not reweigh the evidence or redetermine the credibility of the witnesses whose demeanor was observed at trial. *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983). It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony. *Neal v. Morris*, 972 F.2d 675, 679 (6th Cir. 1992). A habeas court therefore must defer to the fact finder for its assessment of the credibility of witnesses. *Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003).

*Samfilippo v. Michigan Department of Corrections*
No. 2:12-CV-10481

The elements of felon in possession of a firearm in Michigan are: (1) that the defendant was convicted of a felony, (2) that the defendant possessed a firearm, and (3) that at the time of possession less than three or five years, depending on the underlying felony, has passed since the defendant had completed his term of incarceration, satisfied all conditions of probation and parole, and paid all fines. *See Parker v. Renico,* 506 F. 3d 444, 448 (6th Cir. 2007). The elements of felony-firearm are that the defendant possessed a firearm while committing, or while attempting to commit, a felony offense. *Id.* Under Michigan law, possession of a firearm can be either actual or constructive. *Id.* (citing *People v. Hill*, 433 Mich. 464; 446 N.W.2d 140, 143 (1989)). Under both federal and Michigan law, "a person has constructive possession if there is proximity to the [weapon] together with indicia of control." *Id.* "Put another way, a defendant has constructive possession of a firearm if the location of the weapon is known and it is reasonably accessible to the defendant." *Parker,* 506 F. 3d at 448, n. 3(quoting *Hill,* 446 N.W. at 143). "As applied, 'reasonable access' is best calibrated to instances where a defendant commits a crime emboldened by a firearm available, but not in hand." *Id.* The Sixth Circuit notes that "[c]onstructive possession exists when a person does not have actual possession but instead knowingly has the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." *Id.* at 449 (quoting *United States v. Craven*, 478 F. 2d 1329, 1333 (6th Cir.1973), *abrogated on other grounds by Scarborough v. United States*, 431 U.S. 563 (1977)).

As an initial matter, the Court agrees with petitioner that there is nothing from the trial court record, as the Michigan Court of Appeals found, that petitioner had admitted to

11

a woman named Stacey during a telephone conversation from the jail that Springstead had taken guns out of Hofffman's house and brought them to petitioner and that he had helped Springstead dispose of the stolen property. Although it appears that the taped conversation between this woman and petitioner was played for the jury, the contents of this conversation were not transcribed. Thus, there is nothing in the record to establish that petitioner made this admission to this woman.

The mere fact that the Michigan Court of Appeals' reason for denying petitioner relief on his sufficiency of evidence claim may have been wrong, however, would not entitle him to habeas relief. The AEDPA requires a federal habeas court to "evaluate the state court's ultimate conclusion, not its announced rationale." *Rashad v. Walsh,* 300 F. 3d 27, 44 (1st Cir. 2002). Indeed, it is not the function of a federal habeas court "to grade a state court opinion as if it were a law school examination." *Id.,* at 45. Furthermore, in determining whether to grant relief to a habeas petitioner, this Court "must determine what arguments or theories...could have supported, the state court's decision" and then "ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the Supreme Court. *Harrington,* 131 S. Ct. at 786. This Court must therefore determine whether any theory would support the Michigan courts' rejection of petitioner's sufficiency of evidence claim.

In the present case, there was sufficient circumstantial evidence for a rational trier of fact to conclude that petitioner knowingly and intentionally transported the firearms that had been taken from Hoffman's house by Springstead, so as to support his convictions for felony-firearm and felon in possession of a firearm. Hoffman testified that in addition

to the two rifles and the shotgun that had been stolen from his home, additional items had been taken, including a bag of socks, Brewer's purse, an X Box 360, a PlayStation 2, a wooden bow and arrow, and his nephew's Sponge Bob game. Compton indicated that her car had been stolen from in front of petitioner's house. Petitioner was driving Compton's car when he and Springstead returned to the crime scene. Although the firearms were no longer in the car, several other items that had been stolen from Hoffman's house were inside of the car that petitioner was driving. Police later recovered several other items that had been stolen from Hoffman's house inside of petitioner's house or inside of a garbage can outside of his home. Petitioner admitted to his mother that Springstead had come over to his house with "stuff" that he knew was stolen.

     A rational trier of fact could have concluded from this evidence that petitioner actively assisted Springstead in attempting to dispose of the items that had been stolen from Hoffman's house, as evidenced by the fact that petitioner was driving Compton's car with Springstead and a number of the stolen items inside and that several additional stolen items had been discovered at petitioner's house, including some that had been concealed in the garbage can. Although the firearms were no longer in Compton's car, Compton testified that based on her reading of the odometer, petitioner had driven the car about 30 to 32 miles, allowing the inference that petitioner and Springstead may have already disposed of the firearms. Moreover, although petitioner claims that he did not know that the firearms were in the car, Hoffman testified that the firearms were from four to four and a half feet long. Because of the size of these weapons, a rational trier of fact could have reasonably concluded that petitioner was aware of their presence in the car that he was driving.

*Samfilippo v. Michigan Department of Corrections*
No. 2:12-CV-10481

In the present case, the evidence establishes, at a minimum, that petitioner assisted Springstead in removing and attempting to conceal the items that had been taken from Hoffman's house. A reasonable jury can believe that a person who stole a person's property from a house also possessed the firearms that were stolen from that residence. *See U.S. v. Larch,* 399 Fed. Appx. 50, 53 (6th Cir. 2010)(there was sufficient evidence of defendant's "knowing possession" of firearms to support conviction for being a felon in possession of a firearms, where firearms were taken along with other items during a burglary). Because the evidence, when viewed in a light most favorable to the prosecution, establishes that petitioner assisted Springstead in disposing of the stolen property that had been taken from Hoffman's house, a rational trier of fact could conclude that petitioner either actually or constructively possessed the firearms that had been taken from Hoffman's house. *See U.S. v. DeCologero,* 530 F.3d 36, 66-67 (1st Cir. 2008)(jury reasonably could have concluded that defendant possessed guns, as required to convict him on charge of felon in possession of firearm, where evidence indicated that defendant participated in burglary and helped other burglars to load duffel bags that contained the stolen guns into car).

To the extent that petitioner is attacking the credibility of the witnesses to claim that the evidence is legally insufficient, petitioner would not be entitled to habeas relief. Attacks on witness credibility are simply challenges to the quality of the prosecution's evidence, and not to the sufficiency of the evidence. *Martin v. Mitchell,* 280 F. 3d 594, 618 (6th Cir. 2002)(internal citation omitted). An assessment of the credibility of witnesses is generally beyond the scope of federal habeas review of sufficiency of evidence claims. *Gall v.*

14

*Samfilippo v. Michigan Department of Corrections*
No. 2:12-CV-10481

*Parker*, 231 F. 3d 265, 286 (6th Cir. 2000). The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim. *Id.* This portion of petitioner's insufficiency of evidence claim rests on an allegation of the witnesses' credibility, which is the province of the jury. Petitioner is therefore not entitled to habeas relief on his sufficiency of evidence claims. *See Tyler v. Mitchell,* 416 F. 3d 500, 505 (6th Cir. 2005).

B. Claim # 3. The jury instruction claim.

Petitioner next contends that he is entitled to habeas relief because the trial judge failed to instruct the jurors regarding "mere presence" being sufficient to sustain a conviction for aiding and abetting. Petitioner claims that the failure to give this instruction not only caused the jurors to wrongly convict him of larceny in a building and larceny of a firearm, but also caused them to convict him of the firearms charges as well.

Respondent contends that this claim is procedurally defaulted because petitioner agreed to waive any argument on appeal concerning the allegedly deficient aiding and abetting instruction. Although petitioner agreed to waive any argument on appeal regarding aiding and abetting with respect to the larceny convictions that were vacated per the agreement with the prosecutor, it is unclear whether he waived any such appeal with respect to the firearms convictions. This Court notes that procedural default is not a jurisdictional bar to review of a habeas petition the merits. *See Trest v. Cain*, 522 U.S. 87, 89 (1997). In addition, "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F. 3d 212, 215 (6th Cir. 2003)(citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)). "Judicial economy might counsel giving the [other] question priority, for example, if it were easily

*Samfilippo v. Michigan Department of Corrections*
No. 2:12-CV-10481

resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525. In light of the fact that petitioner's claim lacks merit, it would be easier to address the merits of the claim rather than determine whether the claim is defaulted.

The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a collateral attack upon the constitutional validity of a state court conviction is even greater than the showing required in a direct appeal. The question in such a collateral proceeding is whether the ailing instruction so infected the entire trial that the resulting conviction violates due process, not merely whether the instruction is undesirable, erroneous, or even "universally condemned", and an omission or incomplete instruction is less likely to be prejudicial than a misstatement of the law. *Henderson v. Kibbee*, 431 U.S. 145, 154-155 (1977). The challenged instruction must not judged in isolation but must be considered in the context of the entire jury charge. *Jones v. United States*, 527 U.S. 373, 391 (1999). Further, any ambiguity, inconsistency or deficiency in a jury instruction does not by itself necessarily constitute a due process violation. *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009). It is not enough that there might be some "slight possibility" that the jury misapplied the instruction. *Id.* at 191. Federal habeas courts do not grant relief, as might a state appellate court, simply because a jury instruction may have been deficient in comparison to a model state instruction. *Estelle v. McGuire*, 502 U.S. 62, 72 (1991).

In the present case, although the trial court did not give the jurors a mere presence instruction, the judge did give the following definition of possession of a firearm after

16

*Samfilippo v. Michigan Department of Corrections*
No. 2:12-CV-10481

instructing the jury on the elements of both felony-firearm and felon in possession of a firearm:

> Possession does not necessarily mean ownership. Possession means that either the person has actual physical control of the gun, as I do the pen I am now holding. Possession may be so where one person alone possesses the firearm or possession may be joint where two or more people each share possession. *It is not enough if the defendant knew about the firearm, the defendant possessed the firearm only if he had control of it or ready accessibility to it.*

(Tr. 11/23/2009, p. 78)(emphasis added).

In the present case, the trial judge's failure to give the jurors a mere presence instruction did not deprive petitioner of a fair trial, in light of her instruction to the jurors that they could only find petitioner guilty of possessing the firearm or firearms if he had control over the firearm or ready access to it. *See U.S. v. Frederick*, 406 F. 3d 754, 764-65 (6th Cir. 2005)(district court's failure to give mere presence instruction did not deprive the defendant of a fair trial where the court defined possession as "exercis[ing] control over something," explained that "constructive possession is when a person does not have physical control over the item, but knowingly can control it any time he wants to," and cautioned the jury "just being present where something is located does not equal possession."). Petitioner is not entitled to habeas relief on his third claim.

C. A certificate of appealability.

A habeas petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction.

17

*Samfilippo v. Michigan Department of Corrections*
No. 2:12-CV-10481

[1] 28 U.S.C. §§ 2253(c)(1)(A), (B). A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000). "A petitioner satisfies this standard by demonstrating that ... jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims. *Id.* at 336-37.

The Court will deny a certificate of appealability, because jurists of reason would not find the Court's resolution of the claims to be debatable.

Although this Court will deny a certificate of appealability to petitioner, the standard for granting an application for leave to proceed *in forma pauperis* (IFP) is a lower standard than the standard for certificates of appealability. *See Foster v. Ludwick,* 208 F. Supp. 2d 750, 764 (E.D. Mich. 2002)(citing *United States v. Youngblood*, 116 F. 3d 1113, 1115 (5th Cir. 1997)). Whereas a certificate of appealability may only be granted if petitioner makes

---

[1] Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254.

*Samfilippo v. Michigan Department of Corrections*
No. 2:12-CV-10481

a substantial showing of the denial of a constitutional right , a court may grant IFP status if it finds that an appeal is being taken in good faith. *Id.* at 764-65; 28 U.S.C. § 1915(a)(3); Fed. R.App.24 (a).  "Good faith" requires a showing that the issues raised are not frivolous; it does not require a showing of probable success on the merits. *Foster,* 208 F. Supp. 2d at 765.  Although jurists of reason would not debate this Court's resolution of petitioner's claims, the issues are not frivolous; therefore, an appeal could be taken in good faith and petitioner may proceed *in forma pauperis* on appeal. *Id.*

### IV. CONCLUSION

For the reasons stated above, this Court concludes that Petitioner Samfilippo is not entitled to federal-habeas relief on the claims presented in his petition.

Accordingly, IT IS ORDERED that the petition for writ of habeas corpus is DENIED WITH PREJUDICE. (Dkt. # 1).

IT IS FURTHER ORDERED that a certificate of appealability is DENIED.   IT  IS FURTHER ORDERED that petitioner will be granted leave to appeal *in forma pauperis.*

Dated: October 2, 2012      /s Arthur J. Tarnow
HON. ARTHUR J. TARNOW
UNITED STATES DISTRICT COURT

---

**CERTIFICATE OF SERVICE**

I hereby certify on October 2, 2012 that I electronically filed the foregoing paper with the Clerk of the Court sending notification of such filing to all counsel registered electronically. I hereby certify that a copy of this paper was mailed to the following non-registered ECF participants on October 2, 2012: **Stephen Samfilippo.**

s/Michael E. Lang
Deputy Clerk to
District Judge Arthur J. Tarnow
(313) 234-5182